**DEMBO, BROWN & BURNS LLP**
By:   Kyle F. Eingorn, Esquire
1300 Route 73, Suite 205
Mt. Laurel, New Jersey 08054
(856) 354-8866
keingorn@dbblegal.com
Attorneys for McCormick 110, LLC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br><br>GEORGE SARIOTIS AND CINDY SARIOTIS,<br><br>Debtors. | CHAPTER 11<br><br>CASE NO. 22-12916-MBK<br><br>Honorable Michael B. Kaplan, U.S.B.J. |

## MEMORANDUM OF LAW IN SUPPORT OF MCCORMICK 110, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

The Debtors, George and Cindy Sariotis (the "Debtors") filed a Petition for Relief under Chapter 11 of the United States Bankruptcy Code on April 10, 2022. McCormick 110, LLC ("McCormick") as successor by assignment to Two River Community Bank (the "Bank"), files this Motion pursuant to Federal Rule of Bankruptcy Procedure 9013 *et seq.* and 11 U.S.C. §362(d). Further, this Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334 and §157.

### I. INTRODUCTION.

McCormick comes before the Court seeking relief from the automatic stay to proceed with its state court rights to foreclose upon certain mortgaged real property. The Debtors filed the underlying bankruptcy, one (1) month after the closure of their prior Chapter 11 bankruptcy where the Debtors confirmed a chapter 11 liquidation plan that required them to sell the

mortgaged real property on or before September 21, 2021. Not only did the Debtors fail to list the properties for sale until March 22, 2022 (after the deadline and after the original sheriff sale date), but they only seek to sell the property in an effort to assist non-debtors to engage in self-dealing.

The Debtors' actions and inactions demonstrate that this matter was filed without a reorganizational purpose, but instead for the purpose of invalidating McCormick's relief from the automatic stay in the First Bankruptcy so that the Debtors could extend their plan of liquidation and sell real property for the benefit of non-debtors. For these reasons, relief from the automatic stay must be granted.

## II. STATEMENT OF MATERIAL FACTS.

### LOAN-1

1. On or about September 2, 2009, Gregory Sariotis, Thalia Sariotis and the Debtors (collectively, the "Loan-1 Obligors") borrowed the sum of $280,000.00 from the Bank ("Loan-1").

2. In order to evidence said obligation, the Loan-1 Obligors executed and delivered to the Bank a Note ("Note-1") in the original principal amount of $280,000.00. A true and correct copy of Note-1 is attached to the Certification of Melissa Bray as Exhibit A.

3. Note-1 provides that the Loan-1 Obligors were to make monthly payments to the lender in amounts pursuant to the terms and conditions of Note-1.

4. In order to secure the obligation of the Loan-1 Obligors under Note-1, the Loan-1 Obligors executed and delivered to the Bank a Mortgage ("Mortgage-1") on the premises located at 61 Redwood Drive, Ocean, New Jersey 07712 ("Property-1"). The Mortgage was thereafter duly recorded with the Clerk of Monmouth County October 26, 2009. A true and correct copy of

the Mortgage is attached to the Certification of Melissa Bray as <u>Exhibit</u> B.

## LOAN-2

5.   On or about December 6, 2011, debtor, George Sariotis borrowed the sum of $200,000.00 from the Bank ("Loan-2").

6.   In order to evidence the loan obligation of George Sariotis to the Bank, George Sariotis executed and delivered to the Bank a Community Image Home Equity Line Agreement and Disclosure ("Note-2"). A true and correct copy of Note-2 is attached to the Certification of Melissa Bray as <u>Exhibit</u> C.

7.   In order to secure the loan obligation of George Sariotis to the Bank under Note-2, the Debtors executed and delivered to the Bank a Mortgage ("Mortgage-2") encumbering the property located at 1801 Pitney Street, Township of Ocean, New Jersey 07755 ("Property-2"). Mortgage-2 was duly recorded with the Clerk of Monmouth County on February 21, 2012. A true and correct copy of Mortgage-2 is attached to the Certification of Melissa Bray as <u>Exhibit</u> D.

8.   Thereafter, the Debtors failed to pay the amounts due and owing as required under Note-1, Mortgage-1, Note-2 and Mortgage-2 (hereinafter collectively referred to as the "Loan Documents") and the Bank accelerated any and all amounts due and owing from the Debtors under the Loan Documents.

9.   Thereafter, on or about December 2, 2019, the Debtors filed a Chapter 11 bankruptcy petition under case number 19-32528-MBK (the "First Bankruptcy").

10.  On or about April 15, 2020, the Court entered an Order Vacating Stay [Doc 33 to Case No. 19-32528-MBK] whereby the Bank was granted relief from the automatic stay to proceed with foreclosure as to Property-1 and Property-2, up to and including final judgment, but was required to return to the Bankruptcy Court to obtain an additional order for relief to proceed

with a sheriff sale.

11. On or about December 31, 2020, the Debtors proposed a First Modified Plan of Liquidation [Doc 67 to Case No. 19-32528-MBK] wherein the Debtors proposed to "market and sell each of [Property-1 and Property-2 and a third property] with a closing date no later than September 21, 2021… in the event that the Debtor is unsuccessful in the marketing and sale of any of the properties, Secured Creditor shall be free to proceed with remedies allowable by state law." Id. at p. 13.

12. On or about January 22, 2021, the Loan Documents were assigned by the Bank to McCormick. True and correct copies of the Assignments of Mortgage are attached to the Certification of Melissa Bray as Exhibits E and F, respectively. See also Allonges attached to Exhibits A and C, thereto.

13. On or about April 6, 2021, the Court entered an Order Confirming First Modified Plan of Liquidation [Doc 87 to Case No. 19-32528-MBK].

14. On or about May 20, 2021, McCormick filed an action in the Superior Court of New Jersey, Chancery Division, F-2724-21 to foreclose upon Property-1.

15. On or about June 7, 2021, McCormick filed an action in the Superior Court of New Jersey, Chancery Division, F-3002-21 to foreclose upon Property-2.

16. The Debtors were unable to sell either Property-1 or Property-2 by the September 21, 2021 deadline proposed in the First Modified Plan and upon information and belief, neither Property-1 nor Property-2 was listed for sale prior to said deadline.

17. A Sheriff sale was scheduled for February 14, 2022; however, the Debtors took their first statutory adjournment to March 14, 2022.

18. On or about March 10, 2022, the First Bankruptcy was closed.

19. Prior to the February 14, 2022 Sheriff sale, the Debtors then took their second statutory adjournment, thereby adjourning the Sheriff sale to April 11, 2022.

20. On or about March 23, 2022, the Debtors provided McCormick with a listing agreement effective March 22, 2022 through June 22, 2022, and for which the broker is an insider and a part owner of Property-1. The listing agreement is only signed by George Sariotis and not the other three (3) owners of Property-1. A true and correct copy of the listing agreement is attached to the Certification of Melissa Bray as Exhibit G.

21. On or about April 4, 2022, the Debtors provided McCormick with a sale contract (the "Contract") for Property-1. The Contract is only signed by George Sariotis and not the other three (3) owners of Property-1. In addition, the sale price, $620,000.00 is insufficient to pay all of the claims securing Property-1. A true and correct copy of the Contract is attached to the Certification of Melissa Bray as Exhibit H.

22. On or about April 5, 2022, the Debtors provided McCormick with the buyer's addendum to the Contract (the "Addendum"). The Addendum provided for use and occupancy for the seller through September 30, 2022. A true and correct copy of the Addendum is attached to the Certification of Melissa Bray as Exhibit I.

23. On April 10, 2022, the eve of the Sheriff sale and just one (1) month after the First Bankruptcy was closed, the Debtors again filed a Chapter 11 bankruptcy petition under case number 22-12916-MBK (the "Second Bankruptcy") [Doc 1].

24. As set forth in the Petition the Debtors reside in Property-2. Id. at p. 2.

25. As of the Petition Date, McCormick is owed the sum of $395,075.63[1] pursuant to the terms and conditions of the Loan-1 documents.

---

[1] As the Debtors would also be required to pay the Sheriff Commissions on the amount owed (such being 3% of the first $5,000.00 and 3% on the sums thereafter) the sum of $7,795.60 is included therein.

26.  As of the Petition Date, McCormick is owed the sum of $252,312.93 under the terms and conditions of the Loan-2 documents.

## II. LEGAL ARGUMENT:

### A. CAUSE EXISTS TO GRANT RELIEF FROM THE AUTOMATIC STAY.

Section 362 of the Bankruptcy Code imposes an automatic stay against the commencement or continuation of judicial, administrative or other actions or proceedings against the Debtor that were or could have been commenced before the commencement of the bankruptcy case. 11 U.S.C. § 362(a)(1). The automatic stay applies to prohibit the enforcement against the Debtor or against property of the estate of a pre-petition judgment, against any act to obtain possession of property of the estate or to exercise control over property of the estate, and/or against any action to collect, assess or recover a claim against the Debtor that arose before the commencement of the case. 11 U.S.C. § 362(a)(2) (3) and (6).

The Bankruptcy Code requires that a bankruptcy court grant relief from the automatic stay if cause exists. Section 362(d)(1) does not define cause, leaving courts to consider what constitutes cause on a case-by-case basis. Baldino v. Wilson, 116 F.3d 87 (3rd Cir. 1997). As discussed by the Third Circuit Court of Appeals in In re SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999), cause exists where there is no "valid reorganizational purpose." To that end, "courts have recognized that if a petitioner has no need to rehabilitate or reorganize, its petition cannot serve the rehabilitative purpose for which Chapter 11 was designed." Id. at 166.

As set forth below, relief from the automatic stay should be granted for cause as the Debtors have no ability or intention to propose a feasible plan of reorganization and, in fact, only filed this bankruptcy to stay McCormick's sheriff sale in order to effectuate the sale of Property-

1 after the Debtors failed and refused to comply with their plan of liquidation in the First Bankruptcy (which was closed just last month). In essence, the Debtors filed this bankruptcy because McCormick had relief from the automatic stay in the First Bankruptcy and which was only necessary because the Debtors failed and refused to sell the Properties by September 21, 2021, as provided by their own plan of liquidation. In addition, this bankruptcy was filed by the Debtors for the benefit of their family members who reside in Property-1 and who stand to earn a commission from the sale of Property-1

Here, there can be no dispute that during the First Bankruptcy, the Debtors confirmed a plan of liquidation, which required the Debtors to list and sell both Property-1 and Property-2 (collectively, the "Properties") on or before September 30, 2021, and if the Properties were not sold, McCormick would have self-executing relief from the automatic stay. There is also no dispute that despite the unequivocal terms of the Debtors' confirmed liquidation plan, the Properties were neither listed for sale nor sold within that time. In fact, Property-1 was not listed until March 22, 2022 [Exhibit G to the Certification of Melissa Bray]. No listing agreement has been provided for Property-2, and an internet search of the property reveals no listings. Only now, in an effort at self-dealing, have the Debtors listed Property-1 for sale and re-filed for bankruptcy protection in an effort to simply ignore the terms of their own confirmed plan of liquidation.

To that end, even though their intentional acts of ignoring the terms of their own confirmed plan of liquidation have provided the Debtors an additional six (6) months of control over the Properties, they now seek this Court's protections for the benefit of non-debtors, Gregory and Thalia Sariotis. Admittedly, the Debtors do not reside in Property-1, in fact, the Debtors have listed their address at Property-2 in the Petition [Doc 1 a p. 2]. However, there is

no dispute that Gregory and Thalia Sariotis are also owners of Property-1. In addition, the Debtors cannot dispute the fact that Property-1 is fully encumbered by McCormick's mortgage as well as the mortgages maintained by Two River Community Bank [See Claim 10-1 to case number 19-32528-MBK]. As such, the sale of Property-1 and the imposition of the automatic stay as to Property-1 is of no benefit to the Debtors as they do not reside in Property-1 and there will be no proceeds of the sale beyond the mortgages of McCormick and Two River Community Bank. As such, this case was filed without a reorganizational purpose.

Once the terms of the Contract and Addendum are taken into consideration, the intent of this bankruptcy becomes clear, i.e., to benefit the non-debtors, Gregory and Thalia Sariotis. As set forth in the Contract, Gregory Sariotis stands to make 2% commission (approximately $12,400.00) from the sale of Property-1. [Exhibit H to the Certification of Melissa Bray]. In addition, Gregory and Thalia Sariotis will also receive use and occupancy of Property-1 until September 30, 2022 [Exhibit I to the Certification of Melissa Bray]. As such, there can be no dispute that this Second Bankruptcy was filed solely for the benefit of Gregory and Thalia Sariotis who stand to benefit from the sale of Property-1 where the bankruptcy estate will see no such benefit.

Clearly, the motivations of the Debtors are clear. The Debtors filed this Second Bankruptcy to reimpose the automatic stay, in contravention of their confirmed plan of liquidation, simply to facilitate the sale Property-1 for the benefit of non-debtors. There is no doubt that once the sale is completed there will be no further need of this case, i.e., this bankruptcy has no reorganizational purpose. Accordingly, relief from the automatic stay is warranted as the sale of Property-1 has no benefit to the bankruptcy estate and the automatic stay was created solely for the benefit of non-debtors who stand to gain from said sale.

I.  **CONCLUSION**

As set forth above, the Lender respectfully submits that it is entitled to an Order Granting Relief from the Automatic Stay as cause exists pursuant to 11 U.S.C. §362(d)(1) and (2) of the United States Bankruptcy Code. Again, the Debtors filed this case simply to invalidate McCormick's relief from the automatic stay so that Property-1 could be sold for the benefit of non-debtors. As this case has no reorganizational purpose, McCormick submits that relief from the automatic stay is warranted.

Respectfully submitted,
**DEMBO, BROWN & BURNS LLP**

/s/ Kyle Eingorn
By: Kyle F. Eingorn, Esquire

Date:  April 15, 2022