# Exhibit D

I certify this to be a true and correct copy of the original.

## Monmouth County Document Summary Sheet



| | |
|---|---|
| MONMOUTH COUNTY CLERK | Transaction Identification Number: 1662162  844858 |
| PO BOX 1251 | Return Address *(for recorded documents)* |
| MARKET YARD | TWO RIVER COMMUNITY BANK |
| FREEHOLD NJ 07728 | 1250 HIGHWAY 35 SOUTH |
| | MIDDLETOWN NJ 07748 |

**Official Use Only**

H CLAIRE FRENCH, CTY CLK
MONMOUTH COUNTY, NJ

INSTRUMENT NUMBER
2012017652
RECORDED ON
Feb 21, 2012
1:10:38 PM
BOOK: OR-8933
PAGE: 5972
Total Pages: 10

COUNTY RECORDING FEES    $100.00
TOTAL PAID    $100.00

| | |
|---|---|
| Submission Date *(mm/dd/yyyy)* | 02/17/2012 |
| No. of Pages *(excluding Summary Sheet)* | 8 |
| Recording Fee *(excluding transfer tax)* | $100.00 |
| Realty Transfer Tax | $0.00 |
| Total Amount | $100.00 |
| Document Type | MORTGAGE |

**Electronic Recordation Level**
SS - Summary Sheet

**Municipal Codes**
OCEAN TOWNSHIP    3702

**Bar Code(s)**


01001848

**Additional Information (Official Use Only)**

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

# Monmouth County Document Summary Sheet

| MORTGAGE | | |
|---|---|---|
| Type | MORTGAGE | |
| Consideration | $200,000.00 | |
| Submitted By | TWO RIVER COMMUNITY BANK | |
| Document Date | 12/06/2011 | |

### Reference Info

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | | | | |

### MORTGAGOR

| Name | Address |
|---|---|
| GEORGE SARIOTIS | 1801 PITNEY STREET, OAKHURST, NJ 07755 |
| CINDY SARIOTIS | 1801 PITNEY STREET, OAKHURST, NJ 07755 |

### MORTGAGEE

| Name | Address |
|---|---|
| TWO RIVER COMMUNITY BANK | 1250 HIGHWAY 35 SOUTH, MIDDLETOWN, NJ 07748 |

### Parcel Info

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

WHEN RECORDED MAIL TO:
TWO RIVER COMMUNITY BANK
Middletown
1250 Highway 35 South
Middletown, NJ 07748

SEND TAX NOTICES TO:
George Sariotis
Cindy Sariotis
1801 Pitney Street
Township of Ocean (Oakhurst), NJ 07755

This Mortgage prepared by: X _____
Name of Signer: Lisa Lentz, Loan Processor
TWO RIVER COMMUNITY BANK

FOR RECORDER'S USE ONLY

# MORTGAGE

**INDEX.** The following index is for convenience purposes only and is not to be used to interpret or to define any provisions of this Security Instrument.

1. DEFINITIONS
   (A) Borrower
   (B) Credit Agreement
   (C) Existing Indebtedness
   (D) Lender
   (E) Owner
   (F) Property
   (G) Related Documents
   (H) Security Instrument
   (I) Sums Secured
2. OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY
3. DESCRIPTION OF THE PROPERTY
4. OWNER'S RIGHT TO MORTGAGE THE PROPERTY AND OWNER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY
5. OWNER'S PROMISE TO PAY
6. OWNER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS
7. NO CLAIM FOR CREDIT FOR TAXES
8. EXISTING INDEBTEDNESS
   (A) Existing Lien
   (B) No Modification
9. OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE
10. OWNER'S OBLIGATION TO MAINTAIN THE PROPERTY
11. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE
12. POSSESSION AND USE
13. LENDER'S RIGHT TO INSPECT THE PROPERTY
14. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY
15. CONTINUATION OF OWNER'S OBLIGATIONS AND OF LENDER'S RIGHTS
    (A) Owner's Obligations
    (B) Lender's Rights
16. OWNER'S OBLIGATIONS AND THOSE OF PERSONS TAKING OVER OWNER'S OBLIGATIONS
17. LOAN CHARGES
18. LEGISLATION AFFECTING LENDER'S RIGHTS
19. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT
20. LAW THAT GOVERNS THIS SECURITY INSTRUMENT
21. OWNER'S COPY
22. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED
23. DEFAULT
24. LENDER'S RIGHTS UPON DEFAULT

| Loan No: | MORTGAGE (Continued) | Page 2 |
|---|---|---|

    (A) Accelerate Payment
    (B) Lender In Possession
    (C) Judicial Foreclosure
    (D) Nonjudicial Sale
    (E) My Payment of Rent
    (F) Deficiency Judgment
    (G) Election of Remedies
    (H) Attorneys' Fees; Expenses
25. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT
26. EARLY CLOSE OUT FEE
27. MISCELLANEOUS PROVISIONS
    (A) Amendments
    (B) Merger
    (C) Time is of the Essence
    (D) Waivers and Consents

1. **DEFINITIONS.** The following words are used often in this document. When they are used, they will have the following meanings:

(A) **Borrower.** George Sariotis and Cindy Sariotis and all other persons and entities signing the Credit Agreement will sometimes be called "Borrower".

(B) **Credit Agreement.** The words "Credit Agreement" mean the credit agreement signed by Borrower and dated December 6, 2011 with a credit limit of $200,000.00. The words "Credit Agreement" include all renewals of, extensions of, modifications of, and substitutions for the credit agreement. Specifically, without limitation, this Security Instrument secures a revolving line of credit, under which Lender may make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. **NOTICE TO OWNER: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.**

(C) **Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Security Instrument.

(D) **Lender.** TWO RIVER COMMUNITY BANK will be called "Lender."

(E) **Owner.** George Sariotis and Cindy Sariotis sometimes will be called "Owner" and sometimes simply "I" or "me."

(F) **Property.** The property that is described in the section titled "DESCRIPTION OF THE PROPERTY" will be called the "Property".

(G) **Related Documents.** All promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Sums Secured will be called "Related Documents".

(H) **Security Instrument.** This mortgage document will also be called the "Security Instrument."

(I) **Sums Secured.** The amounts described below in the section titled "OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY" sometimes will be called the "Sums Secured." The lien of this Security Instrument will not exceed at any one time the principal amount of $200,000.00, plus accrued interest, payments made by Lender for taxes and insurance, and any other payments made by Lender as provided for in this Security Instrument.

THIS MORTGAGE IS DATED December 6, 2011, BETWEEN George Sariotis, whose address is 1801 Pitney Street, Township of Ocean (Oakhurst), NJ 07755 and Cindy Sariotis, whose address is 1801 Pitney Street, Township of Ocean (Oakhurst), NJ 07755 (sometimes below will be called "Owner," "Borrower," "I," or "me"); and TWO RIVER COMMUNITY BANK, whose address is Middletown, 1250 Highway 35 South, Middletown, NJ 07748 (sometimes below will be called "Lender").

2. **OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY.** I mortgage, grant and convey to Lender the Property, subject to the terms of this Security Instrument, to have and to hold all of the Property to Lender, and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. Those rights that the law gives to lenders who hold mortgages on real property

| Loan No | MORTGAGE (Continued) | Page 3 |
|---|---|---|

include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if I fail to do any of the following:

(A) Pay all the amounts that I owe Lender as stated in the Credit Agreement;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

3. DESCRIPTION OF THE PROPERTY. I mortgage, grant and convey to Lender the Property described in (A) through (I) below.

(A) This Property is located in Monmouth County, State of New Jersey:

All that certain tract or parcel of land conveyed to mortgage by deed dated March 23, 1988 and recorded March 25, 1988 in Book 4839 at Page 57 in the Office of the Clerk of the County of Monmouth and also known as Lot: 105 in Block: 33

The Real Property or its address is commonly known as 1801 Pitney Street, Township of Ocean, NJ 07755. The Real Property tax identification number is Lot: 105 Block: 33.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the Property;"

(D) All rents and royalties from the Property described in subparagraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future; and

(I) All replacements of or additions to the Property described in subparagraphs (B) through (I) of this section.

4. OWNER'S RIGHT TO MORTGAGE THE PROPERTY AND OWNER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY. I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

THIS MORTGAGE IS GIVEN TO SECURE (A) PAYMENT OF THE SUMS SECURED AND (B) PERFORMANCE OF ALL OF MY OBLIGATIONS UNDER THIS MORTGAGE. I PROMISE AND I AGREE WITH LENDER AS FOLLOWS:

5. OWNER'S PROMISE TO PAY. I will pay to Lender on time principal and interest due under the Credit Agreement and any late charges due under the Credit Agreement.

6. OWNER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS. I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will do this by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I must promptly pay or satisfy a superior lien unless: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation;

| Loan No· | MORTGAGE<br>(Continued) | Page 4 |
|---|---|---|

or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien. I will then pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**7. NO CLAIM FOR CREDIT FOR TAXES.** I will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. I will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**8. EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Security Instrument:

(A) **Existing Lien.** The lien of this Security Instrument securing the Sums Secured may be secondary and inferior to an existing lien. I expressly covenant and agree to pay, or see to the payment of, the Existing Indebtedness and to prevent any default under the Existing Indebtedness.

(B) **No Modification.** I shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Security Instrument by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. I shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**9. OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.** I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. If the Property is or becomes located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I agree to obtain and maintain Federal Flood Insurance for the maximum amount of my credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maxiumum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender. I agree to maintain such insurance for the term of the loan. In no event, however, shall I be required to provide hazard insurance in excess of the replacement value of the buildings and other improvements on the Property. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgagee clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that is owed to Lender under the Credit Agreement and under this Security Instrument. If any of the proceeds remain after the amount that is owed to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Credit Agreement, that use will not delay the due date or change the amount of any of the regularly scheduled payments under the Credit Agreement. However, I and Lender may agree in writing to those delays or changes.

If Lender acquires the Property as provided below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater

| Loan No. | MORTGAGE (Continued) | Page 5 |
|---|---|---|

than the Sums Secured immediately before the Property is acquired by Lender or sold.

**10. OWNER'S OBLIGATION TO MAINTAIN THE PROPERTY.** I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

**11. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE.** If I fail to comply with any provision of this Security Instrument, including any obligation to maintain existing indebtedness in good standing, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on my behalf may, but will not be required to, take any action that Lender thinks to be appropriate. Any amount that Lender spends or incurs in so doing will bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of my repayment. All such expenses, at Lender's option, will (A) be payable on demand, (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due either during the term of any applicable insurance policy or during the remaining term of the Credit Agreement, or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Security Instrument also will secure payment of these amounts. The rights provided for in this paragraph will be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any action taken by Lender under this paragraph will not constitute a cure of any default so as to bar Lender from any remedy that it otherwise would have had under this Security Instrument.

If Lender required mortgage insurance as a condition for my loan, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**12. POSSESSION AND USE.** Until in default, I may remain in possession and control of and operate and manage the Property.

**13. LENDER'S RIGHT TO INSPECT THE PROPERTY.** Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before, or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**14. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY.** A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Credit Agreement, that use will not delay the due date or change the amount of any of the regularly scheduled payments under the Credit Agreement. However, Lender and I may agree in writing to those delays or changes.

**15. CONTINUATION OF OWNER'S OBLIGATIONS AND OF LENDER'S RIGHTS.**

(A) **Owner's Obligations.** Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the regularly scheduled payments of principal and interest due under the Credit Agreement or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Credit Agreement and under this Security Instrument.

Lender may allow delays or changes for a person who takes over my rights and obligations, even if Lender is not requested to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Credit Agreement or under this Security Instrument, even if Lender is requested to do so.

(B) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security

| Loan No: | MORTGAGE (Continued) | Page 6 |
|---|---|---|

Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right to demand immediate payment in full of the amounts that are owed to Lender under the Credit Agreement or under this Security Instrument.

**16. OWNER'S OBLIGATIONS AND THOSE OF PERSONS TAKING OVER OWNER'S OBLIGATIONS.** Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Owner, each of us is fully obligated to keep all of Owner's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.

**17. LOAN CHARGES.** If the Credit Agreement secured by this Security Instrument is subject to a law which sets maximum Credit Agreement charges, and that law is finally interpreted so that the interest or other Credit Agreement charges collected or to be collected in connection with the Credit Agreement exceed permitted limits: (A) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Credit Agreement or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Credit Agreement.

**18. LEGISLATION AFFECTING LENDER'S RIGHTS.** If a change in applicable law would make any provision of the Credit Agreement or this Security Instrument unenforceable, Lender may require immediate payment in full of all Sums Secured by this Security Instrument as that phrase is defined above. If Lender requires immediate payment in full under this Paragraph, Lender will take the steps and may act as specified below.

**19. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT.** Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class, certified or registered mail unless applicable law requires use of another method. The notice will be addressed to me at the address shown at the beginning of this Security Instrument. A notice will be given to me at a different address if I give Lender notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to the Lender's address shown at the beginning of this Security Instrument. A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph or of applicable law.

**20. LAW THAT GOVERNS THIS SECURITY INSTRUMENT.** This Security Instrument will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions. This Security Instrument has been accepted by Lender in the State of New Jersey.

**21. OWNER'S COPY.** I will be given one conformed copy of the Credit Agreement and of this Security Instrument.

**22. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED.** Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Owner is sold or transferred and Owner is not a natural person. However, Lender will not require immediate payment in full if this is prohibited by federal law as of the date of this Security Instrument.

**23. DEFAULT.** At Lender's option, I will be in default under this Security Instrument if any of the following happen: (A) I commit fraud or make a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about my income, assets, liabilities, or any other aspects of my financial condition. (B) I do not meet the repayment terms of the Credit Agreement. (C) My action or inaction adversely affects the collateral for the credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, death of all persons liable on the credit line account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

Loan No.

**MORTGAGE**
**(Continued)**

Page 7

---

**24. LENDER'S RIGHTS UPON DEFAULT.** If I am in default under this Security Instrument, this is what Lender may do, in addition to any other rights or remedies provided by law:

(A) **Accelerate Payment.** Lender shall have the right at its option without notice to me to require that I pay immediately the entire amount then remaining unpaid under the Credit Agreement and under this Security Instrument, including any prepayment penalty which I would be required to pay.

(B) **Lender In Possession.** Upon acceleration of the Sums Secured or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents, including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to receiver's fees, premiums on the receiver's bonds and reasonable attorneys' fees and then to the other Sums Secured secured by this Security Instrument.

(C) **Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing my interest in all or any part of the Property.

(D) **Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose my interest in the Property by non-judicial sale.

(E) **My Payment of Rent.** If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

(F) **Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining on the Sums Secured after application of all amounts received from the exercise of the rights provided in this section.

(G) **Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of my obligations under this Security Instrument, after my failure to do so, that decision by Lender will not affect Lender's right to declare me in default and to exercise Lender's remedies.

(H) **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Security Instrument, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Sums Secured payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. I also will pay any court costs, in addition to all other sums provided by law.

**25. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT.** When Lender has been paid all amounts due under the Credit Agreement and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**26. EARLY CLOSE OUT FEE.** Borrower agrees to reimburse Lender for all costs associated with the origination of this loan, including but not limited to, Credit Reports, Flood Insurance Searches, and Appraisal preparation and requisite appraisal review fee, recording fees, and all other origination costs if the loan account is closed out within twenty-four (24) months of the loan closing date. These costs shall be in the amount of $800.00.

**27. MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Instrument:

(A) **Amendments.** What is written in this Security Instrument and in the Related Documents is my entire agreement with Lender concerning the matters covered by this Security Instrument. To be effective, any change or amendment to this Security Instrument must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

| Loan No | MORTGAGE (Continued) | Page 8 |
|---|---|---|

**(B) Merger.** There shall be no merger of the interest or estate created by this Security Instrument with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**(C) Time is of the Essence.** Time is of the essence in the performance of this Security Instrument. This means that all deadlines for performance provided under this Security Instrument must be strictly complied with and that failure to do so will result in a default.

**(D) Waivers and Consents.** Lender will not be deemed to have waived any rights under this Security Instrument unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right will operate as a waiver of such right or any other right. A waiver by any party of a provision of this Security Instrument will not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and me, will constitute a waiver of any of Lender's rights or any of my obligations as to any future transactions. Whenever consent by Lender is required in this Security Instrument, the granting of such consent by Lender in any instance will not constitute continuing consent to later instances where such consent is required.

I ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS SECURITY INSTRUMENT, AND I AGREE TO ITS TERMS.

I ACKNOWLEDGE RECEIPT, WITHOUT CHARGE, OF A TRUE AND CORRECT COPY OF THIS SECURITY INSTRUMENT.

OWNER:

X _____   X _____
George Sariotis                                       Cindy Sariotis

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___New Jersey___         )
                                                              ) SS
COUNTY OF ___Monmouth___       )

BE IT REMEMBERED that on this ___6th___ day of ___December___, 20 __11__, before me, the undersigned authority, personally appeared George Sariotis and Cindy Sariotis who, I am satisfied, are the persons named in the foregoing instrument, and I having first made known to them the contents thereof, they acknowledged that they signed, sealed and delivered the same as their voluntary act and deed. All of which is hereby certified.

_____
[Notary Public]

PATRICIA Y. PHILLIPS
A Notary Public of New Jersey
Commission Expires June 21, 2013

---

LASER PRO Lending, Ver. 5.57.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2011. All Rights Reserved.
- NJ G:\CFI\LPL\F90.FC TR-5969 PR-2