UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 AND 9
Maggie H. McGee, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email: maggie.mcgee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 22-12916 |
| | Chapter 7 |
| George Sariotis and Cindy Sariotis, | |
| | Honorable Michael B. Kaplan, Chief Judge |
| Debtors. | Date: |

**OBJECTION BY THE UNITED STATES TRUSTEE TO CROSS MOTION FOR A DETERMINATION THAT COMMISSIONS BEING REPAID BY BURKE & MANNA REMAIN SUBJECT TO OCEANFIRST BANK N.A.'S PRE-PETITION MORTGAGE LIENS, DIRECTING THE TURNOVER OF THE COMMISSIONS TO OCEANFIRST BANK, N.A., AND VACATING AND RE-ISSUING THE JULY 7, 2023, ORDER *NUNC PRO TUNC***

Andrew R. Vara, the United States Trustee for regions 3 and 9 ("U.S. Trustee"), by and through counsel, and in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby files *Objection to OceanFirst Bank N.A.'s Cross Motion For A Determination That Commissions Being Repaid By Burke & Manna Remain Subject To OceanFirst Bank N.A.'s Pre-Petition Mortgage Liens, Directing The Turnover Of The Commissions To Oceanfirst Bank, N.A. And Vacating and Re-Issuing The July 7, 2023 Order Nunc Pro Tunc* ("Cross Motion").

**PRELIMINARY STATEMENT**

OceanFirst's Motion should be denied for numerous reasons. First, OceanFirst seeks an equitable remedy when it asks this Court to allow it to recover Burke & Manna's improperly paid

commissions. To obtain this remedy, OceanFirst must demonstrate cause under the Unclean Hands Doctrine, which it cannot do. OceanFirst acquiesced in the sale of the Sariotis' properties with full knowledge that the Debtor's son brokered the sales and did not intervene to stop it. Accordingly, OceanFirst should be denied any right to reclaim funds it watched be improperly distributed without objection in the first instance. The application of Judicial Estoppel also prevents OceanFirst from asserting contrary positions in a legal proceeding. As OceanFirst affirmatively supported the payment of the commissions to Burke & Manna in a certification filed in support of a sale motion – and now, it seeks the payment of the fees, benefitting from the very misconduct it acquiesced to earlier it is estopped from prevailing in its Cross Motion. Moreover, as the U.S. Trustee argued in his initial Motion, no security interest in favor of OceanFirst attached to the return of commissions as such action can only be raised in connection with a bankruptcy case, post-petition and OceanFirst does not have a pre-petition lien in such recovery. Finally, even if the recovered funds are deemed to be proceeds of OceanFirst's collateral, it has failed to show that it has such a lien under Article 9 of the Uniform Commercial Code, adopted in New Jersey.

## BACKGROUND [1]

1. On May 30, 2023, the Debtors, through counsel, filed a letter brief in opposition to the U.S. Trustee's Motion seeking Return of Commission Paid to Burke & Manna (the "Debtors' Opposition"). ECF No. 100. In the Debtors' Opposition, the Debtors argued that OceanFirst was aware of the role Gregory Sariotis played in the sale of the Debtors' assets. *Id.* According to the Debtors' Opposition, OceanFirst knew that the George Sariotis' son was brokering the sales possibly

1The U.S. Trustee incorporates the facts recited in its Motion Seeking Return of Commissions Paid to Burke & Manna As Real Estate Brokers for the Debtor ("U.S. Trustee's Motion") and Motion for Determination that Commissions Improperly Paid Post-Petition to Real Estate Brokers Be Turned Over to the Bankruptcy Estate ("UST Motion 2").

as early as April 2022, when McCormick 110, LLC filed a motion for relief from stay to foreclose on the Redwood Property. Specifically, the Debtors' Opposition states "during the ensuing litigation between the Debtors and secured creditors, McMormick 110, LLC [sic] ("McCormick"), OceanFirst Bank, N.A. ("OceanFirst") not only was the identity and role of Gregory Sariotis as realtor for the Debtors disclosed on the Court's docket, but his role was also supported by OceanFirst as to the sale of both the Debtors' Properties." *Id.* at 2.

2. The Debtors' Opposition goes on to state that "OceanFirst joined in the Debtors' opposition and again disclosed the role of Gregory Sariotis as "non-debtor insider. . . entitled to receive a 2% commission" and cites to the Certification of Mathew P. Dolan, Esq. filed in Response to McCormick 110, LLC's Motion for Relief from Stay on May 5, 2022. ECF No. 26 at ¶ 10. In the certification, Mr. Dolan states "[E]ven if the listing agent is a family member seeking a 2% sale commission, that number is less than the amounts typically paid to residential listing agents and if McCormick 110 disagreed with that figure then McCormick 110 should have opposed the application for retention of Burke & Manna which was granted by the Court on May 3, 2022." Apparently, Mr. Dolan did not read the retention application as there exists no reference to Gregory Sariotis or his status as an insider. ECF No. 14.

3. Relevant provisions of the description of OceanFirst's security are described in exhibits attached to its proof of claim (Claim 7-1), as follows:

a. Exhibit 5- Mortgage between Two Rivers Community Bank and the Debtors, executed on December 11, 2011, indicates "this instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time." Property is defined as "collectively the Real Property and the Personal Property." Personal Property is defined as "equipment, fixtures and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together will all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds

and refunds of premiums) from any sale or other disposition of the Property." The Real property described in the mortgage is 61 Redwood Drive, aka lot 14 in Block 150.06, Township of Ocean County of Monmouth, New Jersey.

b. Exhibit 6 – Mortgage between Two Rivers Community Bank and the Debtors dated December 6, 2011- same provisions as Exhibit 5 but Mortgage on 1801 Pitney Street.

c. Exhibit 9- Promissory note entered into between Town River Community Bank and George Sariotis dated March 23, 2017 includes "Fifth Mortgage lien on1801 Pitney Street…."

d. Exhibit 10- Mortgage between Two Rivers Community Bank and the Debtors dated June 23, 2014 on 1801 Pitney Street in Oakhurst NJ and includes "real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters…."

e. Exhibit 15- Mortgage between Two Rivers community Bank and the Debtors dated November 21, 2014 in 1801 Pitney Street, and includes the same description as that set forth in Exhibit 10.

f. Exhibit 16 – Mortgage between Debtors and Thalia Sariotis and Gregory, on the one hand, and Two River Community Bank, on the other, dated November 20, 2014 and includes same description as Exhibit 15 except that mortgage is on 61 Redwood Drive in Ocean, NJ.

4. The proof of claim filed by OceanFirst does not include any UCC financing statements.

## DISCUSSION

### A. Either the Unclean Hands Doctrine or the Application of Judicial Estoppel Prevents OceanFirst from Arguing It Has A Security Interest in Improperly Paid Commissions Under the Bankruptcy Code When OceanFirst Knew of, Acquiesced in, and Advocated for, the Improper Payments.

#### 1. Ocean First Has Unclean Hands

The Doctrine of Unclean Hands will deny equitable relief "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities." *Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 147 n. 12 (3d Cir.1999). *See also, e.g.*, *Young v. United States*, 535 U.S. 43, 50–51, 122

S.Ct. 1036, 152 L.Ed.2d 79 (2002) (explaining that bankruptcy courts "appl[y] the principles and rules of equity jurisprudence") (citation omitted).

While this Court opined in a recent decision that the bankruptcy court is not a court of equity, this Court clarified that bankruptcy courts address both legal and equitable claims. *In re LTL Management, LLC,* 637 B.R. 396 (Bankr. D. N. J. 2022) overruled on other grounds, 64 F.4th 84 (3rd Cir. 2023), citing, HON. MARICA S. KRIEGER, *"The Bankruptcy Court is a Court of Equity": What does that Mean?,* 50 S.C.L. REV. 275 (1999). Whether the bankruptcy court is a court of equity or a court that applies equitable principles in individual cases is of little consequence here, because OceanFirst is seeking an equitable remedy. OceanFirst is asking this court to correct an injustice, i.e., to return money to OceanFirst that was improperly distributed to an underserving professional. OceanFirst also seeks the equitable remedy of vacating the Court's previous order placing the returned funds in the Trustee's trust account and have this Court enter an order *nunc pro tunc* requiring Burke & Manna to turn over the funds to OceanFirst. To obtain this award, OceanFirst must have acted equitably in the first instance, which OceanFirst did not do.

OceanFirst advocated on behalf of commission to be paid to Gregory Sariotis, knowing he was an insider. In direct contradiction to this position, it now seeks to benefit from the return of the fees that were improperly paid. OceanFirst had an opportunity to "do the right thing" and object to the payment of commissions to an insider who was never properly employed by the Court and failed to do so. There is no evidence that OceanFirst made any reasonable inquiry to ensure that this Court approved of the employment of an insider to sell the Debtors' properties. Instead, it assumed the employment was legitimate and advocated on behalf of the broker arguing that the payment of commissions to an insider was reasonable. Taking the position that the commissions paid to an insider were reasonable, on the one hand, and then claiming a right to the funds once they were

determined to have been improperly paid is unconscionable. Such conduct prevents OceanFirst from receiving the equitable remedy it seeks.

**2. OceanFirst Is Judicially Estopped from Bringing Its Motion**

Judicial Estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken in a prior legal proceeding. See e.g., *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. General Motors Corp*, 3337 F.3d 314 (3rd Cir. 2003). The Doctrine of Judicial Estoppel bars a party that has previously asserted a legal position from asserting an inconsistent or contrary legal position in a later proceeding. *Yetter v. Wise Power Systems, Inc*, 929 F. Supp 2d 329 (D. Del. 2013), citing, *Oneida Motor Freight Inc., v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir. 1988.). This equitable remedy is applied to preserve the integrity of the system. Its focus is on the relationship between the litigant and the judicial system. *Id.* The Third Circuit has established a three-part test for determining when judicial estoppel is warranted. *See Montrose Medical Group Participating Savings Plan v. Bulger,* 243 F.3d 773, 777–78 (3d Cir.2001). The two legal positions taken by the party must be irreconcilably inconsistent, bad faith must be the basis for the change in position, and judicial estoppel is not to be used unless that remedy is "tailored to address the harm identified" and no lesser sanction is adequate for that purpose. *Id.* at 778.

Here, Judicial Estoppel is warranted. First the legal positions taken by OceanFirst are irreconcilably inconsistent. In the sales proceedings, Ocean First affirmatively supported the payment of the commissions to Burke & Manna in a certification filed in support of a sale motion. It also argued in favor of the commissions to be paid to Gregory Sariotis. Now, OceanFirst has reversed its position, demanding the money for itself, thereby benefitting from the very misconduct it acquiesced to earlier. These contrary positions are irreconcilably inconsistent and amount to bad faith, as the paid commissions cannot be both valid and invalid at the same time. Under the third

element, Judicial Estoppel may not be used unless that remedy is "tailored to address the harm identified" and no lesser sanction is adequate for that purpose. Here, the remedy sought by the U.S. Trustee – that the commissions remain property of the estate rather than inure to the benefit of OceanFirst is specifically tailored to address the harm identified. Thus, OceanFirst is judicially estopped from claiming an entitlement to the returned funds.

**3. OceanFirst Argument that the U.S. Trustee Should Be Estopped From Raising the Issues Presented Here is Without Merit.**

OceanFirst argues that the U.S. Trustee should be estopped from making its arguments to return the improperly paid funds to the estate because the U.S. Trustee failed to raise the issue prior to the sales of the Debtors' properties. ECF No. 119-1 at 9. This argument lacks merit. As stated in the U.S. Trustee's *Reply To Opposition By Counsel To The Debtor To Motion Seeking Return Of Commission Paid To Burke & Manna As Real Estate Brokers For The Debtors:* "The Supreme Court has repeatedly held that equitable estoppel may not be used against the federal government the same way it can be used against other litigants. *See, e.g. Heckler v. Cmty. Health Servs. Of Crawford Col, Inc.,* 467 U.S. 51, 60 (1984). As of 1990, the Supreme Court noted that it had reversed every Circuit Court government estoppel ruling with which it had been presented. *See Off of Pers. Mgmt. v.* Richmond, 496 U.S. 414, 433 (1990). Here, OceanFirst bears the burden of proving the equitable estoppel defense. *See United States v. Asmar,* 827 F.2d 907, 912 (3rd Cir. 1987). A party seeking to estop the government must prove "affirmative misconduct," as well as the traditional elements of misrepresentation, reasonable reliance, and detriment. *See e.g, Heckler v. Cmty. Health Servs. Of Crawford Col, Inc.,* 467 U.S. at 59; *Fredericks v. Comm'r,* 126 F.3d 433, 438 (3rd Cir. 1997); *United States v. Asmar,* 827 F.2d at 912." OceanFirst fails to prove any of these elements, and thus, this Court should reject OceanFirst's apparent equitable estoppel defense.

OceanFirst further argues that the improperly paid commissions would have been paid to

OceanFirst had the U.S. Trustee raised the issue prior to the sale hearing, and therefore they are entitled to the funds now, does not necessarily follow. Likely, the Debtor would have obtained a different agent either with Burke & Manna (assuming no conflict existed) or with another agent altogether. No evidence exists that OceanFirst would have received the money.

**B. OceanFirst's Attempt to Distinguish the Cases Cited By the U.S. Trustee Fails Under Scrutiny As OceanFirst Cannot Establish It Had a Pre-Petition Security Interest in Funds Recovered Under the Bankruptcy Code.**

OceanFirst argues that the cases cited by the U.S. Trustee in support of his position that recovery of improperly paid professional fees is "after acquired" property and therefore, OceanFirst does not have a security interest in those funds, are distinguishable and should not be relied upon by this court. ECF No. 119-1 at 6; *See Integrated Testing Products, Corp.,* 69 B.R. 901 (D.N.J. 1987); *In re Ludford Fruit Products, Inc*., 99 B.R. 18 (Bankr. C.D. Cal. 1989); *In re Connolly Geaney Ablitt & Willard, P.C*., 585 B.R. 644 (Bankr. D. Mass. 2018); *In re Roselli Moving & Storage Corp*., 568 B.R. 592 (Bankr. E.D. N.Y. 2017). OceanFirst distinguishes the cases cited by the U.S. Trustee by saying, incorrectly, that they stand for the proposition that a secured creditor retains a lien in avoidance actions unless the actions brought by a trustee are unavailable to the secured creditor, non-assignable, and arise post-petition. ECF 119-1 at 7. It then argues that since OceanFirst could have brought the motion to recover the commissions itself, it retained its lien on the recovered funds. OceanFirst further argues that as the above cited cases were determined applying chapter 5, they are distinguishable, and should the court apply similarly decided cases it should look at *In re Hosp. Inv. Corp,* 283 B.R. 451, 453(Bankr. E.D. Mich 2002)*; In re Pearson Indus, Inc.,* 178 B.R. 753, 762 (Bankr. C.D. Ill 1995); *and In re Figearo,* 709 B.R. 914 (Bankr. D. Nev. 1987), which courts held that a secured creditor's lien attaches to avoidance actions where the secured creditors have an independent right of action. ECF No. 119-1 at 10. OceanFirst argues that merely because it had the

ability to seek return of the commissions paid to Burke & Manna OceanFirst retained its lien.

First, OceanFirst is incorrect that creditors cannot bring avoidance actions. *See e.g. In re Pursuit Capital Manaement, LLC*, 595 B.R. 631, 658 (Bankr. Del, 2018). Courts allow creditors to bring avoidance action in limited circumstances. *Id.*

More importantly, there exists a fundamental obstacle to OceanFirst's argument. The underlying premise in the decision of *Integrated Testing Products* and similarly decided cases cited above, is that a secured creditor *cannot* obtain a lien on claims that arise post-petition under the Bankruptcy Code that are not specifically identified in a creditor's pre-petition security agreement. *See e.g. Roselli,* at 595 and cases cited therein.

In *Roselli,* a bank had a security interest in a debtor's accounts which funds the debtor transferred pre-petition. After the trustee sought recovery of the transfers, the court held that the bank did not hold a perfected security interest in the proceeds of a chapter 5 avoidance action filed by the trustee because the bank did not have a pre-petition security interest the estate's chapter 5 causes of action. *Roselli,* at 595. In *Ludford*, the creditor argued that because its security agreement included after acquired property, the trustee's preference recovery actions constituted its collateral. However, the court, applying Section 552(a), held that "neither the preference actions nor the resulting recoveries in this case came into being until after the debtor filed its chapter 11 petition. Therefore, 552(a) prevents [creditor] prepetition security interest from attaching to the preference actions or preference recoveries." *Ludford,* at 24. Similarly, in *Connolly*, the court found that the secured creditor did not have a security interest in avoidance actions filed by the trustee and further held that the secured creditor's lien did not attach to the trustee's recovery of a commercial tort claim, as such was not described in the underlying security agreement. *Connolly* at 654. The same is true in the case at hand.

Nothing in OceanFirst's security documents state that it has a security interest in the recovery of improperly paid fees under section 328 and therefore, OceanFirst does not have a lien on such recoveries. No where in OceanFirst's security agreement attached to its proof of claim does OceanFirst claim a security interest in funds improperly paid to professionals of a bankruptcy estate. While OceanFirst claims such a result is an unjust outcome, the opposite is true. OceanFirst was complicit in the funds being improperly paid, and it would be unjust to allow them to benefit from their acquiesce in such conduct.

Even if OceanFirst's interpretation of *Integrated Testing* was accurate, i.e., that its security interest attached to the recovered funds because it could have brought the motion to recover the commissions itself, in *Integrated Testing*, the appellant asserted a security interest in the preference action as a "general intangible." The court held that a security interest in a general intangible survives bankruptcy. However, in this case, nothing in OceanFirst's proof of claim indicates that it had any rights in general intangibles. No UCC-1 filings are attached to the proof of claim. Regardless, even if the financing statement does reference general intangibles, the U.S. Trustee does not concede that such an interest would create a security interest in the recovered funds.

Instead, OceanFirst argues that the recovered funds are "proceeds" of the sale. They are not. The recovered funds, are just that, recovered funds. *See E.g., In re Residential Capital, LLC*, 497 B.R. 403, 414 (Bankr. S.D. N.Y. 2013) (noting the issue of whether the lien "attached to commercial tort claims, including avoidance actions, those claims must be listed in the security documents with specificity, which was not the case here."). This interpretation is consistent with Section 551 which provides that property subject to an avoided transfer is preserved for the benefit of the estate.

If the Court upholds the view of OceanFirst, an absurd result could ensue. Since OceanFirst

acknowledges that if the U.S. Trustee had filed its Motion under Section 549, it would not have an interest in the recovered funds. Nothing prevents this Court from granting such motion if filed by the trustee before the deadline to file avoidance actions expires.

OceanFirst's argument highlights the faulty logic in the cases it cites in support of its position because it would never have brought the motion to recover the commissions. It approved of the distribution of the funds to an improper party and, in fact, argued in favor of the distribution. If OceanFirst's argument is correct, no one would have brought the motion to recover the commissions improperly paid to Burke & Manna, and Burke & Manna would have kept the improperly received money. There would have been no consequence and no enforcement of the Bankruptcy Code for the unethical and illegal conduct. The U.S. Trustee would have been placed in an in tenuous position of having identified an abuse of the bankruptcy system and having no remedy. The U.S. Trustee would not step in the shoes of a secured creditor to represent its interest. Such an outcome is an anathema to the role of the U.S. Trustee which is to protect the integrity of the bankruptcy system and to civilly prosecute cases of fraud and abuse. Similarly, secured creditors should not benefit from actions undertaken by trustees and, instead, wait in the wings letting others do their work for them and then reap the benefits.

C. **OceanFirst Has Failed To Show That It Has An Interest In "Proceeds" of the Debtor's Collateral After The Commissions From the Sales of Properties Were Transferred to Burke & Manna**

Even if OceanFirst persuades the Court that the recovered funds are "proceeds" of OceanFirst's collateral, OceanFirst has failed to prove that it has a security interest in those proceeds. This is not a case where the secured creditor is asserting a lien on proceeds of property where the debtor converted the pre-petition collateral to cash and the money remains with the debtor. Here, some of the "proceeds" of the sales of the Debtors property were distributed, albeit

wrongfully, to Burke & Manna.

"Proceeds," under the New Jersey Uniform Commercial Code, Title 12A:9:102(64), "means the following property: (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;(B) whatever is collected on, or distributed on account of, collateral;(C) rights arising out of collateral;(D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral."

Upon the disposition or collection of collateral, a secured party's security interest continues in any "identifiable" proceeds. N.J.S.A. 12A:9-315(a)(2) (emphasis added). A secured creditor cannot perfect a security interest in cash proceeds, including money, which is perfected by control. UCC 9-102(9) and 9-312(b) (1 and 3). A secured creditor may perfect a security interest in cash proceeds that are traceable but only until the financing statement lapses or after 20 days, whichever is longer. N.J.S.A. 12A:9-315(b)(2). The secured creditor's interest is also limited by the "lowest intermediate balance rule." N.J..S.T. 12A: 9-135 cmt. 3.

In this case, the "proceeds" of the sales of the Debtor's properties were distributed and some of the money went to Burke & Manna as a commission. Burke & Manna likely deposited the money into their accounts and then presumably used the money for whatever purpose they determined. No record exists as to what happened to the money after it was received by Burke & Manna. Thus, OceanFirst has failed to demonstrate that it has a security interest in the "proceeds" of the sale distributed by tracing or any other equitable measure. Further, the U.S. Trustee cannot determine whether the UCC financing statements were filed, or if they lapsed as no UCC financing statements

are attached to OceanFirst's proof of claim.

Even if OceanFirst can claim the recovered funds are proceeds under Section 552(b)(2), a security interest in post-petition traceable proceeds from property continues "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b)(2). In this case, the U.S. Trustee asks this court to distribute the returned funds to the estate, as equity demands, given the conduct of OceanFirst described above.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that this Court grant the U.S. Trustee's Motion 2, deny OceanFist's Cross Motion, and require that the returned commissions be turned over to the chapter 7 trustee and allow the trustee to administer the returned commissions as an asset of the estate and for such other and further relief that the Court deems just and proper.

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By: *<u>/s/ Maggie McGee</u>*
Maggie McGee
Trial Attorney

DATED: August 24, 2023